## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SHERRI FOSTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION FILE |
| ) | NO. _____ |
| v. ) | |
| ) | |
| TRUIST BANK, INC., ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

## COMPLAINT

Plaintiff Sherri Foster ("Plaintiff" or "Ms. Foster") files this for Equitable Relief and Damages against Defendant Truist Bank, Inc., ("Defendant" or Truist Bank") showing the Court as follows:

## INTRODUCTION

1. This civil rights action is brought pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendant subjected Plaintiff to discrimination based on her gender and retaliation. Plaintiff seeks injunctive and equitable relief, back pay, compensatory damages, costs of litigation, and attorneys' fees to remedy these civil rights violations.

## PARTIES

2. Plaintiff Sherri Foster is a resident of Polk County, Georgia and submits herself to the jurisdiction of this Court.

3. Defendant Truist Bank is a foreign profit corporation licensed to conduct business in the State of Georgia.

4. Truist Bank is the successor in interest to SunTrust Banks, Inc. ("SunTrust") as a result of a merger between SunTrust and BB&T Corp in December 2019.

5. At the time of the events of which Plaintiff complains, Truist Bank, through its predecessor SunTrust, conducted business, maintained facilities and derived substantial revenue in the State of Georgia and is subject to the jurisdiction and venue of this Court.

6. Truist Bank may be served with process by serving a copy of the Complaint and Summons on its registered agent, CT Corporation System at 289 S. Culver St., Lawrenceville, Georgia 30046-4805.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under Title VII, and 28 U.S.C. § 1331 & § 1343(a)(4).

8.  Venue is proper in this district and division under 28 U.S.C. § 1391 because Truist Bank conducts business in this district and division and the unlawful actions and practices were committed within the Northern District of Georgia.

## ADMINISTRATIVE PROCEEDINGS

9.  Ms. Foster filed a Charge of Discrimination with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains.

10. Ms. Foster received a Notice of Right to Sue on April 7, 2020.

11. This civil action is filed in the appropriate federal district court within ninety (90) days of the receipt of Ms. Foster's Notice of Right to Sue.

## STATEMENT OF FACTS

12. Ms. Foster is a former state and federal law enforcement officer with more than thirty years of experience in both field and financial management investigations and training.

13. Truist Bank hired Ms. Foster as an AML Senior Strategist in Money Laundering on July 7, 2014.

14. Within a few months of hiring Ms. Foster, Truist Bank formed the International Wealth Management ("IWM") Team and named Ms. Foster both lead

for the Atlanta IWM team and the Fraud Investigations Unit ("FIU") Training Coordinator.

15.  Truist Bank hired Jon Goldberg in August 2014 and assigned him to be Ms. Foster's manager.

16.  Mr. Goldberg treated Ms. Foster with hostility and blatant disrespect as a result of her failure to adhere to Mr. Goldberg's perceived gender norms that women should not be in positions of authority or male-dominated fields.

17.  Mr. Goldberg frequently would burst into Ms. Foster's office while she was conducting investigative meetings and take over these meetings thereby undermining her ability to confidentially investigate matters.

18.  Ms. Foster repeatedly requested Mr. Goldberg to refrain from interrupting these meeting, but he responded, "I am the boss, and I can come in when I want to do so."

19.  Mr. Goldberg approached Ms. Foster's husband at a work-related event and said, "Damn, man.  Can't you teach your wife to write an email?"

20.  Mr. Goldberg repeatedly told Ms. Foster "You talk too fucking much."

21.  Mr. Goldberg threatened Ms. Foster by stating "I have never hit a woman, but I would really like to hit you right now."

22. While attending a Florida International Bankers Association conference in Miami, Mr. Goldberg told Ms. Foster that a female employee on her team would not be permitted to attend future conferences because she refused to go out and drink with him and other male employees in the evenings.

23. Ms. Foster also didn't go out and drink with the male employees in the evenings.

24. Ms. Foster was later asked to speak as a panelist at a money laundering training event.

25. Truist initially approved Ms. Foster to speak at the event, but Mr. Goldberg then refused to allow her to do so.

26. Mr. Goldberg placed additional reporting and approval requirements on Ms. Foster and other female team members above and beyond what he required of male counterparts.

27. The additional reporting and approval requirements Mr. Goldberg required limited the autonomy and impartiality of Ms. Foster's investigations.

28. For example, in approximately March 2016, Mr. Goldberg learned that Ms. Brenda Baker, a female IWM team member, intended to file a Suspicious Activity Report against an international client.

29. Mr. Goldberg required Ms. Foster to direct Ms. Baker to change the Report.

30. Ms. Baker refused to change the report, and Ms. Foster agreed with Ms. Baker's assessment of the suspicious activity by the international client.

31. Mr. Goldberg became very angry about the Report and subsequently required Ms. Foster to justify all such report filings to him.

32. However, Mr. Goldberg did not require male investigators to either explain or justify any suspicious activity reports they filed.

33. Ms. Foster complained to AML Director Emma Waddell about Mr. Goldberg's conduct and gender discrimination on or about April 26, 2016.

34. Ms. Foster also complained about Mr. Goldberg's gender discrimination to Human Resources consultant Deborah Watson in late September 2016.

35. Although Ms. Watson purported to investigate Ms. Foster's complaint, she informed Ms. Foster that her claims of gender discrimination were "unsubstantiated."

36. In approximately December 2016, Ms. Foster escalated her complaints of gender discrimination to the Chief Human Resources Officer Margaret Callihan

and Chief Risk Officer Tim Bicha, and in doing so, Ms. Foster also complained about the insufficiency of Ms. Watson's investigation into her prior complaints.

37. Truist Bank never took action to correct and prevent Mr. Goldberg's gender discrimination despite Ms. Foster's repeated complaints.

38. In January 2017, within a couple of weeks of Ms. Foster's complaints to Truist Bank's officers, Truist Bank stripped Ms. Foster of her training coordinator title and duties.

39. Less than two months later, Truist removed Ms. Foster from her IWM team lead position and transferred her to the Special Investigations Group.

40. Truist simultaneously transferred leadership of the IWM team to a male employee named Aaron Spivey.

41. In March 2018, Truist Bank notified Ms. Foster her Special Investigations Group position was eliminated.

42. Truist Bank made the decision to eliminate the Special Investigations Group in approximately January 2017, before it transferred Ms. Foster to the role.

43. Truist Bank transferred Ms. Foster to the Special Investigation Group position, knowing the position was soon to be eliminated, to ensure her employment would end.

44. This transfer also allowed Truist Bank to ensure the continued employment of male employee Aaron Spivey by giving him the role previously held by Ms. Foster.

45. Truist Bank subjected Ms. Foster to a hostile work environment and discrimination on the basis of her gender.

46. Trust Bank stripped Ms. Foster of her duties and title and terminated Ms. Foster's employment in retaliation for her complaints of gender discrimination.

47. Ms. Foster has suffered financial loss, mental anguish, humiliation, and other emotional harm as a result of Truist Bank's violations of federal law.

## COUNT I
## DISCRIMINATION IN VIOLATION OF TITLE VII

48. Plaintiff hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

49. Defendant Truist Bank's discriminated against Ms. Foster because of her gender by subjecting her to a hostile work environment and different terms and conditions of employment than her male counterparts in violation of the statutory provisions and protections of Title VII.

50. Defendant Truist Bank discriminated against Ms. Foster because of her gender by (1) stripping her of her FIU Training Coordinator and IWM team lead positions and replacing her with a less experienced male employee; and (2)

transferring her to the position it planned to eliminate, thereby terminating her employment.

51. Truist Bank engaged in its discriminatory practices intentionally and/or with malice and/or with reckless indifference to Ms. Foster's rights.

52. As a direct and proximate result of Truist Bank's violations of Title VII, Ms. Foster has suffered damages, including but not limited to, lost wages, benefits of employment, emotional distress, mental anguish, humiliation, and pain and suffering.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

53. Plaintiff hereby realleges all preceding paragraphs of this Complaint as if each paragraph had been fully and completely restated herein.

54. Ms. Foster engaged in a protected activity by repeatedly complaining to Truist Bank's officers and its human resources department about the gender discrimination to which Mr. Goldberg subjected her.

55. Truist Bank retaliated against Ms. Foster because of her protected activity by (1) stripping her of the FIU Training Coordinator and IWM team lead positions and replacing her with a less experienced male employee; and (2) transferring her to a position it planned to eliminate, thereby terminating her employment.

56. Truist Bank stripped Ms. Foster of her FIU Training Coordinator and IWM team lead positions approximately less than a month after her last protected complaint.

57. Truist Bank transferred Ms. Foster to a position it planned to eliminate approximately less than two months after her last protected complaint.

58. Truist Bank terminated Ms. Foster's employment approximately less than three months after her last protected complaint.

59. Truist Bank's stripping of Ms. Fosters duties and positions and termination of Ms. Foster's employment constitute retaliation in violation of Title VII.

60. As a direct and proximate result of Truist Bank's violations of Title VII, Ms. Foster has suffered damages, including but not limited to, lost wages, benefits of employment, emotional distress, mental anguish, humiliation, and pain and suffering.

61. Truist Bank engaged in retaliatory practices intentionally and/or with malice and/or with reckless indifference to Ms. Foster's rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Ms. Foster respectfully invokes the powers of this Court and prays for the following:

a) That the Court grant trial by jury;

b) That the Court issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights to be free from discrimination as provided by Title VII, and that the Court permanently enjoin Truist Bank from such conduct in the future;

c) That Plaintiff have and recover from Truist Bank all amounts available under Title VII, including but not limited to back pay, front pay, compensatory damages, liquidated damages, damages for mental anguish, benefits, and all other damages allowed by law;

d) That the Court award pre-judgment and post-judgment interest to Plaintiff on any of the above amounts;

e) That Truist Bank be ordered to pay to all of Plaintiff's costs and attorney's fees of this action;

f) That the Court grant such other and further equitable and monetary relief as it deems equitable, just and proper.

Respectfully submitted 30th day of June, 2020.

**LEGARE, ATTWOOD & WOLFE, LLC**

/s/ *Amelia A. Ragan*
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com
Amelia A. Ragan
Georgia Bar No. 381387
aaragan@law-llc.com

Decatur Town Center Two
125 Clairemont Avenue, Suite 380
Decatur, Georgia  30030
Telephone: (470) 823-4000
Facsimile: (470) 201-1212
Counsel for Plaintiff